## Halverson v. Halverson

*Daniel W. Rullo,* for plaintiff.
*James R. DiFrancesco,* for defendant.

KIESTER, *S.J.*, June 15, 1983—

## THE ISSUES

1. Is Mrs. Halverson entitled under the agreement to $1,000 monthly until her death or remarriage?

2. Is Mrs. Halverson entitled under the agreement to the $1,000 monthly until the time that William, the youngest child would have attained the age of 18 (April 17, 1983) or graduated from high school (June, 1983)?

3. Since William met an untimely death on February 23, 1979, did the monthly alimony obligation terminate when the next youngest child, Barry, attained age 18 on January 3, 1982?

## FACTS

On April 28, 1982, plaintiff filed a complaint for declaratory judgment for the purpose of obtaining a judicial decision constructing the relevant terms and provisions of a property settlement agreement entered into by the parties on November 11, 1978.

The position of plaintiff is that she is entitled to receive $1,000 a month from defendant until her death or remarriage.

The position of defendant is that his obligation to pay plaintiff $1,000 a month terminated on January 3, 1982 when Barry Halverson, the then youngest living child, attained the age of 18 years.

An evidentiary hearing was held on June 3, 1983 when the two principals testified as to their intent and their understanding of the terms of the agreement. There was offered and received into evidence correspondence relating to the negotiations between the parties and their counsel as well as the agreement of November 11, 1978, the interpretation of which is in dispute.

The first paragraph under the title "Financial Obligations" on page eight of the agreement, provides:

"Husband agrees to pay to wife the sum of $1,000.00 per month, commencing 30 days after the termination of the marriage, and continuing thereafter, on the same date, each succeeding month until the death or remarriage of Wife or upon William Halverson, son of the parties hereto, attaining the age of 18 years or graduating from high school, whichever occurs later."

William Halverson, born April 17; 1965, the youngest son of the parties, died in an automobile accident on February 23, 1979. If William had lived, he would have graduated from high school in June of 1983 and defendant states that he would have continued the $1,000 monthly payments until that time.

There were other financial obligations between the parties. Pending a divorce support and alimony pendente lite were payable by husband to wife at the rate of $300 per child.

It was agreed that the payments were support for wife and taxable to her.

There was also a provision that the husband pay the wife $10,000 "in lieu of future support to which the wife may be legally entitled to beyond the expiration date as hereinafter set forth." This $10,000 payment was to be deposited in an escrow account in the names of the attorneys representing the parties.

The "expiration date as hereinafter set forth" is not identified as such. It can only refer to the "death or remarriage of wife or upon William Halverson, son of the parties, attaining the age of 18 years or graduating from high school, whichever occurs

later." The provision for the $10,000 payment negatives an intent of the parties that the $1,000 a month payment would continue after William attained 18 years of age or graduated from high school. The parties simply intended that the payments continue until William graduated from high school after reaching age 18. "Whichever comes later" was not intended to modify "until the death or remarriage of wife." The provision for the $10,000 payment is persuasive that the death or remarriage of the wife prior to William attaining age 18 or graduating from high school would end the $1,000 per month payments.

The phrase, "whichever is later" is repeated several times in the paragraph providing child support for each child commencing 30 days after termination of the marriage and continuing thereafter until the child (Robert, Barry and William) "attains the age of 18 years, or graduates from high school, whichever is later."

This comprehensive settlement provided for the division of real estate and a payment of $50,000 by husband to wife for her disputed claim of an interest in the Ken Halverson Insurance Company. The wife had worked in this business for many years, receiving no monetary compensation for her services.

The parties differ in their interpretation of a no-compete provision that extends to November 11, 1983. Husband's understanding of this restriction does not completely prohibit wife from continuing to act as an insurance agent. This difference is of limited weight in determining what the parties intended by the $1,000 monthly payment set forth in the first paragraph under financial obligations.

The negotiations between the parties through their attorneys represented by correspondence extended from September 26, 1977 through Septem-

ber 15, 1978. The agreement was signed November 11, 1978.

In November of 1977, Mrs. Halverson was inter alia demanding alimony of $1,000 per month until she remarried or died. Mr. Halverson responded with a proposal on March 1, 1978 under which Mrs. Halverson would receive the $150,000 residence and release her claim on the insurance business. Included was the proposal that Mr. Halverson would pay the $1,000 per month alimony until the youngest child reached 18 years of age at which time the alimony payments would be reduced to $300 a month and to continue at that rate until Mrs. Halverson reached the age of 62 years or remarried or died.

On March 15, 1978, Attorney Barbera for Mrs. Halverson replied to the March 1 proposal:

". . . Again the only thing I can suggest is that either the $1,000.00 per month support be continued or cash settlement with respect to the insurance agency may make the offer attractive enough to have Mrs. Halverson consider some other support arrangement for herself less than $1,000.00 a month." (Defendant's Exhibit 7.)

The negotiations continued with Mr. Halverson maintaining his position on May 31, 1978 that the alimony ends when the youngest child reached age 18. In addition to the alimony, Mr. Halverson offered Mrs. Halverson $20,000 in cash upon the entry of a final divorce decree.

In the last correspondence between the attorneys, Attorney DiFrancesco for Mr. Halverson, wrote to Attorney Barbera on September 15, 1978 offering $10,000 plus $25,000 for the interest of Mrs. Halverson in the partnership. There were other proposals but no mention was made of alimony negotiations in this letter.

It is reasonable to conclude from the testimony of the parties and the correspondence between their attorneys, that a final compromise settlement was accomplished by Mr. Halverson purchasing from Mrs. Halverson her interest in the insurance agency for $50,000 and Mrs. Halverson abandoning her claim for alimony extending beyond the youngest child reaching the age of 18 or graduating from high school, whichever came later.

The agreement of November 11, 1978 recites and it appears from the testimony and the record that the agreement was the joint work product of the attorneys representing the parties.

Plaintiff's Exhibit "B" was a first draft forwarded by Attorney DiFrancesco with notes of Attorney Barbera interlining the typed provisions.

Under the circumstances stated, the fact that Attorney Barbera prepared the final draft does not require that the agreement be construed against Mrs. Halverson.

The agreement recites that "This agreement has been fully explained to each party by the party's attorney." Nevertheless, in support of the different position of the parties, each counsel argues that the language of the agreement is clear and unambiguous.

This court concludes from the testimony of Mr. and Mrs. Halverson, the negotiations of the parties and the terms of the entire agreement, that the intent of the parties was that the alimony payment of $1,000 monthly was for the purpose of helping Mrs. Halverson maintain the family residence for the benefit of the children until such time as the youngest child attained the age of 18 or graduated from high school, whichever occurs later. It was also the intention of the parties that the alimony payment end should Mrs. Halverson die or remarry prior to

the youngest child attaining the age of 18 or graduating from high school.

Inasmuch as the objective of the alimony payment was to maintain the family residence for the benefit of the children, the unforseen and untimely death of the youngest child, William, made impossible the performance of this provision of the contract. The obligation of Mr. Halverson to pay Mrs. Halverson $1,000 per month plus the child support payment set forth in the fifth paragraph under "Financial Obligations" terminated on January 3, 1982 when Barry Halverson reached the age of 18. Apparently he had earlier graduated from high school.

## CONCLUSIONS OF LAW

1. Under the terms of the agreement, it was the intention of the parties that if Mrs. Halverson did not marry or died prior thereto she would be paid $1,000 monthly until William reached age 18 or graduated from high school if he became 18 before graduation.

2. The death of William before he reached the age of 18 years rendered impossible the performance of this part of the contract. The purpose of the provision was to maintain the home residence for the benefit of the children until the youngest child graduated from high school or attained age 18 if the graduation preceded the 18th birthday.

3. The obligation of Mr. Halverson to pay Mrs. Halverson the $1,000 monthly alimony terminated when the surviving youngest child, Barry, attained 18 years of age on January 3, 1982.

## DECREE NISI

Now, June 15, 1983, based on the foregoing findings of fact and conclusions of law, the complaint for a declaratory judgment is dismissed.